733 P.2d 724

Pamela Kinney **WALTON**, individually and as Guardian for Lynn Walton, Lauri Walton and Erich Walton, minor children, Plaintiff-appellants,

v.

**STATE** of Idaho; Idaho Department of Corrections, an Executive Department of the State of Idaho; Idaho State Board of Corrections, a Board of the State of Idaho; Darrol Gardner, individually and as the former warden of the Idaho State Correctional Institution; William Crowel, former Director of the Department of Corrections; George Bernick, Correctional Facilities Supervisor, Defendants-respondents,

and

John Does 1 Through 10, unknown individuals; X, Y and Z, corporations whose identity is thus far unknown, Defendants.

No. 16449.

Supreme Court of Idaho.

Feb. 13, 1987.

504

G. Lance Salladay, of Risch, Goss, Insinger & Salladay, Boise, for plaintiffs-appellants.

Jim Jones, Atty. Gen., and Brian K. Julian, of Quane, Smith, Howard & Hull, Boise, for defendants-respondents.

BAKES, Justice.

This is an appeal from a district court order granting summary judgment in favor of the State of Idaho in a suit by the appellant Pamela Kinney Walton and her children. The district court found that respondents were immune from suit under the Idaho Tort Claims Act. We affirm.

Pamela Kinney Walton (Walton) was sexually assaulted and raped on October 9, 1983, by an escaped inmate of the Idaho State Penitentiary. The escapee, John Andrew Anderson, had been committed to the custody of the Idaho State Penitentiary on August 24, 1981, under an indeterminate four-year sentence for theft by possession of stolen property (a pair of cowboy boots purchased with a stolen credit card which he received from a friend). Anderson was initially classified to medium custody and placed at the farm dormitory. In November of 1981, Anderson's custody level was reduced to minimum; however, because of a detainer from Colorado, he was placed in medium custody at the main site until that matter was resolved. He was transferred back to minimum custody at the farm dormitory on March 24, 1982. He received good work reports. In June, 1982, Anderson was granted two unescorted 8–hour passes. He used both of these passes to seek employment and returned each time. On August 9, 1982, Anderson was given a third unescorted 8–hour pass to shop for civilian clothes and to look for a job. He failed to return. Some fourteen months later, Anderson allegedly attacked Walton at his residence near Challis, Idaho.

Walton claims that the state was negligent in allowing Anderson the 8–hour pass. The claim against the Idaho State Board of Corrections is based on allegations that the prison authorities acted negligently in classifying Anderson's custody level. Specifically, it is alleged that the authorities failed to discover that Anderson had a history of prior escape attempts and of assault and battery.

The state claimed immunity from suit, basing its defense on the Idaho Tort Claims Act, I.C. §§ 6–901 *et seq.* In granting summary judgment, the trial court based its analysis upon the parallel function test of *Dunbar v. United Steelworkers,* 100 Idaho 523, 602 P.2d 21 (1979), which was subsequently overruled by our opinion in *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986). After reviewing the record, we affirm the district court, albeit on different grounds than those relied upon by the district court.

On appeal Walton argues that our recent decision in *Sterling v. Bloom, supra,* is dispositive and requires reversal of the tri-

al court. Walton correctly notes that *Sterling* abolished the "parallel function" test relied on by the trial court and established a new threshold test for governmental immunity under I.C. § 6–903(a). However, in response to Walton's argument, the respondent asserts that there are three other alternative legal bases for affirming the trial court's decision which do not conflict with our decision in *Sterling v. Bloom, supra.* First, the respondent contends that any legal duty owed by the Board of Corrections is only to the public at large and not as to this specific plaintiff, or any identifiable class of reasonably identifiable victims to which this plaintiff belongs, and accordingly there was no breach of legal duty by the board and, therefore, no tort. Secondly, respondent board argues that the alleged assault in question here occurred some 14 months after the defendant failed to return from the furlough, and therefore any negligence of the board in making the furlough decision was too remote and too attenuated to be the proximate cause of the defendant's alleged assault on the plaintiff. Finally, the board argues that release of the defendant on the 8–hour pass or furlough is an act for which the legislature in 1980 expressly granted immunity from tort liability by the enactment of I.C. § 20–231.

We agree with respondent that I.C. § 20–231 does grant the Board of Corrections immunity from tort liability for the claims made in plaintiff's complaint. I.C. § 20–231 reads:

"**20–231. Immunity from parole or release of a prisoner.**—Neither a public entity nor a public employee or servant *shall be* financially responsible or *liable for any injury resulting from determining whether to parole or release* a prisoner or from determining the terms or conditions of his parole or release or from determining whether to revoke his parole or release." (Emphasis added.)

The facts in this case demonstrate that Anderson was an inmate who was "released" on an 8–hour unescorted pass, in accord with Board of Corrections regulations, and thus the Board of Corrections and the members thereof are not "liable for any injury resulting from determining whether to ... release" Anderson. Walton argues that the word "release" in the statute should be construed to mean release from custody at the end of a prisoner's sentence. Such an interpretation would render the statute meaningless, however, as the state would clearly not be liable for the actions of a former inmate who had served his debt to society and was now free of all obligations resulting from his conviction. The statute is clear and unambiguous and exempts the respondent from liability in this situation. Furthermore, *Sterling* carefully distinguished between supervision of probationers and releasing a prisoner. *Sterling* pointed out that I.C. § 20–231

"immunized governmental entities and employees from liability for negligently paroling *or releasing a prisoner* or failing to revoke the parole or release, but not for negligently supervising probationers or failing to revoke a probation." *Sterling v. Bloom*, 111 Idaho at 224, 723 P.2d at 768 (emphasis added).

The 8–hour unescorted pass was a "release" within the meaning of I.C. § 20–231. Accordingly, we affirm the trial court's granting of the summary judgment motion, based on I.C. § 20–231, rather than the grounds employed by the trial court. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984).

SHEPARD, C.J., concurs in result.

DONALDSON, HUNTLEY and BISTLINE, JJ., concur.