[No. 8543-1-III.   Division Three.   March 9, 1989.]

RICHARD VINCENT NOONAN, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Terence Ryan, Parkins, Ryan & Harkins, Vernon Harkins,* and *Rush, Hannula & Harkins,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Jon Ferguson, Assistant; William Goss, Everett Coulter,* and *Turner, Stoeve, Gagliardi & Goss,* for respondents.

GREEN, J.—Richard and Erica Noonan, their daughter Linda, Thea Hollingsworth and Jacqueline Shanks, the plaintiffs, brought this action for damages against the State of Washington, members of the Board of Prison Terms and Paroles, certain parole officers and other employees, and the Spokane Alcohol Rehabilitation Center, Inc. (SPARC), for injuries inflicted by Michael Jones, while on parole. The State and SPARC moved for summary judgment. Both motions were granted and plaintiffs appeal. We affirm.

The principal issues presented are whether: (1) the State and its parole officers are shielded from tort liability based upon quasi–judicial immunity; (2) there was a special relationship between either the State or SPARC and Mr. Jones or the plaintiffs; and (3) the Board's decision to release Mr.

Jones and SPARC's acceptance of him into its program constitutes the tort of outrage.

Mr. Jones was convicted of an armed robbery that occurred in 1975. On February 3, 1983, Mr. Jones was paroled from this conviction by the Board on the condition he enter and successfully complete an alcohol treatment program with SPARC, a private, nonsecure alcohol treatment facility located in a residential area in Spokane. Shortly after entering the program, Mr. Jones' parole was suspended when he attempted to obtain marijuana. However, based upon the recommendation of his parole officer, the Board permitted him to reenter the program on May 8. He absconded 4 days later.

On May 15 Mr. Jones, armed with a knife, broke into the apartment of Thea Hollingsworth in Spokane and unsuccessfully attempted to abduct Jacqueline Shanks, who was present. The next morning, armed with a knife and gun, he broke into Richard and Erica Noonan's home. He raped and kidnapped their daughter, Linda. En route to Seattle, he was arrested.

First, the plaintiffs contend the court erred in finding the Board's decision to parole Mr. Jones was discretionary and thus the Board is shielded from liability based upon quasi-judicial immunity. They argue the decision was not discretionary, but ministerial and consequently subject to tort liability.

Summary judgment may be granted only when there is no genuine issue as to any material fact, *Wendle v. Farrow,* 102 Wn.2d 380, 383, 686 P.2d 480 (1984), and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 618 P.2d 96 (1980). The court considers the pleadings, depositions and admissions on file, together with the affidavits, if any, *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985), in the light most favorable to the nonmoving party. *Turngren v. King Cy.,* 104 Wn.2d 293, 312, 705 P.2d 258 (1985). The motion may be granted only

if from all the evidence reasonable persons could reach but one conclusion. *Sea–Pac Co. v. United Food & Comm'l Workers, Local 44,* 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

█ The plaintiffs base their cause of action against the State upon RCW 4.92.090, which renders the State liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation. By enacting this statute, the Legislature abolished "on a broad basis" the doctrine of sovereign tort immunity. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 252, 407 P.2d 440 (1965). This statute has been interpreted to exclude from tort liability legislative, judicial and purely executive processes of government, including quasi–legislative and quasi–judicial or discretionary acts. *Evangelical Church,* at 253. The reason for cloaking these kinds of decisions with immunity is to permit basic governmental policy decisions to be made and implemented without the threat of tort liability. *Evangelical Church,* at 254. As stated in *Evangelical Church,* at 254:

> "Liability cannot be imposed when condemnation of the acts or omissions relied upon *necessarily* brings into question the propriety of governmental objectives or programs or the decision of one who, with the authority to do so, determined that the acts or omissions involved should occur or that the risk which eventuated should be encountered for the advancement of governmental objectives."

(Quoting Peck, *Federal Tort Claims Act—A Proposed Construction of the Discretionary Function Exception,* 31 Wash. L. Rev. 207, 240 (1956)). The determination of whether the particular acts are discretionary is a question of law or in some instances a mixed question of law and fact. *Evangelical Church,* at 253.

The plaintiffs' argument that the Board's decision is ministerial is based on RCW 9.95.100, which states in part: "The board shall not, . . . until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation

has been complete and he is a fit subject for release." Additionally, plaintiffs point to RCW 9.95.170 which requires the Board, before fixing conditions for release from custody or parole, to "thoroughly inform itself as to the facts of such convicted person's crime" and the "convict as a personality."

■ There are four preliminary questions to consider in determining whether an act is ministerial or discretionary:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Evangelical Church,* at 255. If these preliminary questions are answered in the affirmative, then the decision can be classified discretionary, regardless of its wisdom. *Evangelical Church,* at 255, 259. If not, further inquiry may be necessary. *Evangelical Church,* at 255. Even if the court determines the decision is discretionary, immunity will not result unless the decision involved a conscious balancing of risks and advantages. *King v. Seattle,* 84 Wn.2d 239, 246, 525 P.2d 228 (1974). In other words, the fact an employee normally engages in discretionary activity is irrelevant if in a given case the employee did not render a considered decision. *King,* at 246.

■ Here, the Board's decision involved a basic governmental policy of furthering the objective of the former sentencing system, which was rehabilitation, not punishment. *In re Blair,* 38 Wn. App. 670, 672, 688 P.2d 532 (1984); Comment, *Thoughts on a Recipe for Just Deserts: The Sentencing Reform Act of 1981,* 18 Gonz. L. Rev. 263, 292

(1982–1983). Second, the Board's decision is essential to the realization of that policy. Third, the decision requires the exercise of policy evaluation, expertise and judgment. As noted in *In re Ayers,* 105 Wn.2d 161, 165–66, 713 P.2d 88 (1986):

> The parole–release decision, however, is more subtle and depends on an amalgam of ·elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner–transfer decision, may be made
>
>> "for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." *Meachum* v. *Fano,* [427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976)].
>
> The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert—Counsel in the Peno–Correctional Process, 45 Minn. L. Rev. 803, 813 (1961).

(Quoting *Greenholtz v. Inmates,* 442 U.S. 1, 9–10, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979)). The parole decision necessarily rests on the Board's experience and judgment as to whether the offender can safely be integrated into society. And last, RCW 9.95.100 vests the statutory authority to make the decision in the Board.

The question of whether a parole decision is discretionary has not yet been addressed in this State. However, a majority of federal and state courts that have considered this issue hold the decision to be discretionary. Some engage in an analysis similar to the one in *Evangelical Church. Beck v. Kansas Univ. Psychiatry Found.,* 580 F. Supp. 527 (D. Kan. 1984); *Lloyd v. State,* 251 N.W.2d 551, 6 A.L.R.4th 1143 (Iowa 1977); *Von Hoene v. Department of*

*Rehabilitation & Correction,* 20 Ohio App. 3d 363, 486 N.E.2d 868 (1985). Other courts reason the board's decision to parole is functionally equivalent to that of a judge.[1] *Farrish v. Mississippi State Parole Bd.,* 836 F.2d 969 (5th Cir. 1988); *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.), *cert. denied,* 454 U.S. 1102 (1981); *Doe v. United Social & Mental Health Servs., Inc.,* 670 F. Supp. 1121 (D. Conn. 1987); *Pate v. Alabama Bd. of Pardons & Paroles,* 409 F. Supp. 478 (M.D. Ala. 1976), *aff'd,* 548 F.2d 354 (5th Cir. 1977); *Siess v. McConnell,* 74 Mich. App. 613, 255 N.W.2d 2 (1977); *Tarter v. State,* 68 N.Y.2d 511, 503 N.E.2d 84, 510 N.Y.S.2d 528 (1986). Still other states have enacted statutes which immunize the state from liability for parole decisions. *Thompson v. County of Alameda,* 27 Cal. 3d 741, 614 P.2d 728, 167 Cal. Rptr. 70, 12 A.L.R.4th 701 (1980); *Walton v. State,* 112 Idaho 503, 733 P.2d 724 (1987); *Coppola v. State,* 177 N.J. Super. 37, 424 A.2d 858, *cert. denied,* 87 N.J. 398, 434 A.2d 1078 (1981); *Burg v. State,* 147 N.J. Super. 316, 371 A.2d 308, *cert. denied,* 75 N.J. 11, 379 A.2d 242 (1977); *Hurst v. State,* 698 P.2d 1130 (Wyo. 1985). A few jurisdictions grant the parole board qualified rather than absolute immunity. *Beck v. Kansas Univ. Psychiatry Found., supra* (although the state tort law barred an action based on its statute, the court held qualified "good faith" immunity will apply under the federal Civil Rights Act); *Donahoo v. State,* 479 So. 2d 1188 (Ala. 1985) (discretionary immunity will not include decisions made in bad faith, beyond the board's authority, or under a mistaken impression of law); *Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 564 P.2d 1227, 5 A.L.R.4th 757 (1977) (if the prisoner's record reveals violent propensities and there is absolutely no reasonable basis for a belief he

---

[1]The plaintiffs' argument to the contrary is without merit. Their reliance on *Cleavinger v. Saxner,* 474 U.S. 193, 88 L. Ed. 2d 507, 106 S. Ct. 496 (1985) is misplaced. That case involved a disciplinary committee which is different from a parole board, the latter being "an arm of the sentencing judge."'" *Cleavinger,* at 204.

had changed, a decision to release him will be grossly negligent or reckless, subjecting the board to liability). *See also* Annot., *Immunity of Public Officer From Liability for Injuries Caused by Negligently Released Individual*, 5 A.L.R.4th 773 (1981); Annot., *Governmental Tort Liability for Injuries Caused by Negligently Released Individual*, 6 A.L.R.4th 1155 (1981).

■ We conclude the four questions in *Evangelical Church* may be answered in the affirmative.[2] Plaintiffs' contention the Board's decision was reckless must be rejected. The wisdom of the decision is not subject to attack if, as here, it is a considered decision. *See Evangelical Church,* at 259; *King v. Seattle, supra* at 246–47.

■ Given our conclusion the Board is immune from liability, *Cleavinger v. Saxner,* 474 U.S. 193, 88 L. Ed. 2d 507, 106 S. Ct. 496 (1985); *Tarter v. State,* 503 N.E.2d at 87, we need not address the plaintiffs' theories of liability based upon the public duty doctrine and the tort of outrage. We also decline to reach plaintiffs' conclusory contention the negligent failure of "lower level" employees of the Department of Corrections, including parole officers and others, to adequately investigate and evaluate the progress of Mr. Jones during his incarceration were ministerial acts. In a motion for summary judgment, the nonmoving party may not rest on conclusions, but must designate specific facts showing there is a genuine issue for trial. *Controlled Atmosphere, Inc. v. Branom Instrument Co.,* 50 Wn. App. 343, 748 P.2d 686 (1988). A party's argument must be supported by reference to the record. RAP 10.3(a)(5); *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975). The plaintiffs' failure to do both precludes review. Moreover, in our view, the immunity granted to the parole board's decision encompasses the acts of those who under its supervision prepare investigation

---

[2]It is significant that effective June 30, 1992, the Board's functions with respect to persons convicted of crimes prior to July 1, 1984, will be transferred to the superior court. RCW 9.95.0011.

reports and recommendations that underlie the Board's decision. *Farrish v. Mississippi State Parole Bd., supra* at 974.

Last, the plaintiffs contend the court erred in finding SPARC had no duty to control Mr. Jones' conduct. They argue based on *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983), SPARC knew or should have known Mr. Jones was not rehabilitated and was likely to cause bodily harm to others unless he was properly controlled. Alternatively, they contend SPARC's acceptance of Mr. Jones into its program and placing him in a residential setting exposing the plaintiffs to physical harm constitutes the tort of outrage. We find no error.

For liability to attach, a duty must first be established. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). The general rule is a person has no duty to prevent a third party from causing physical injury to another unless there is a special relationship between that person and the third party or the victim of the third party's conduct. Restatement (Second) of Torts § 315 (1965); *Petersen v. State, supra.* However, "[o]ne who takes charge of a third person whom he knows or should know to be like to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts § 319.

■ Here, neither of these Restatement rules apply to SPARC nor is *Petersen v. State, supra,* applicable. In applying section 315 of the Restatement in *Petersen,* the court found the relation between a psychiatrist and his patient created a special relationship. This type of relationship does not exist here. We are not inclined to extend *Petersen* to the circumstances existing in this case. Furthermore, we do not find section 319 of the Restatement applicable since SPARC was not put on notice either by his conduct or his record that Mr. Jones had the propensity to commit the acts he engaged in here. Thus, we conclude as a matter of law SPARC was under no duty to protect the

plaintiffs from the unfortunate events which occurred. Neither do we find the plaintiffs' tort of outrage theory applicable on the facts presented here.

Affirmed.

THOMPSON, C.J., and FARIS, J. Pro Tem., concur.

Review denied at 112 Wn.2d 1027 (1989).