[No. 8632–1–III.   Division Three.   February 23, 1988.]

DUANE A. BAUMGART, *Appellant,* v. GRANT COUNTY, *Respondent.*

*David Murdach,* for appellant.

---

[8]Judge Ringold had indicated his concurrence prior to his retirement on January 11, 1988.

*Joseph S. Montecucco* and *Turner, Stoeve, Gagliardi & Goss,* for respondent.

THOMPSON, A.C.J.—Duane Baumgart appeals summary judgment dismissal of his complaint against Grant County for injuries resulting from a vehicle accident. We affirm.

Kenneth D. Iverson was released from the Grant County Jail on May 25, 1984. Mr. Iverson had been in custody since December 27, 1983, when he was arrested and charged in Adams County with second degree burglary and in Grant County with second degree burglary and second degree theft. On May 28, 1984, 3 days after release, Mr. Iverson, having ingested drugs and alcohol, caused an accident in which Mr. Baumgart was seriously injured.

Mr. Baumgart sued Grant County, claiming the County released Mr. Iverson before he had completed his sentence and that the premature release resulted in his injuries. The trial court, in granting the County's motion for summary judgment, assumed that Mr. Iverson's release was premature, but nonetheless held that the County's duty to Mr. Baumgart was too attenuated to establish liability, and that the cause of Mr. Baumgart's injuries was Mr. Iverson's negligent or drunken driving, not the County's premature release. Mr. Baumgart sought review in the Supreme Court; the case was transferred to the Court of Appeals.

The principal issue is whether the trial court properly granted summary judgment to the County. Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). In reviewing a summary judgment, the court takes the position of the trial court, assuming facts most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81

Wn.2d 528, 530, 503 P.2d 108 (1972). The burden is on the moving party to prove there is no genuine issue as to a fact that could influence the outcome at trial. *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

At the center of this appeal is a factual dispute regarding the County's release of Mr. Iverson from jail on May 25, 1984. The County argues that it acted properly in carrying out the order of the sentencing judge. Mr. Baumgart argues the County released Mr. Iverson too soon, and that Mr. Iverson should have been in jail on the day he injured Mr. Baumgart. Considering the evidence in a light most favorable to Mr. Baumgart, the trial court assumed that the County released Mr. Iverson prematurely. We likewise address the issue on that basis.

In granting the County's motion for summary judgment, the trial court held that Mr. Baumgart's theory of liability

> is too attenuated upon which to predicate the county's liability for the injury to an innocent third party and that the cause of the plaintiff's injury is the drunken driving or the negligent driving of Iverson and not miscalculation of the sentence.

The court specifically applied the rationale of *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985).

Liability for negligence requires proof of a duty, the breach of which is the proximate cause of the plaintiff's injury. *Hartley*, at 777. "Washington law recognizes two elements to proximate cause: Cause in fact and legal causation". *Hartley*, at 777.

Cause in fact refers to the actual ("but for") consequences of an act: "but for" the defendant's act, the plaintiff would not have been injured. *Hartley*, at 778; *King v. Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974). The cause in fact determination is not appropriate for summary judgment unless there is but one reasonable conclusion. *Hartley*, at 778. Here, at least for the purposes of review of summary judgment, cause in fact is assumed to exist: "but for" the County's release of Mr. Iverson, Mr. Baumgart would not have been injured.

> Legal causation, on the other hand, rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent." *King v. Seattle*, at 250 (quoting 1 T. Street, *Foundations of Legal Liability* 100, 110 (1906)).

*Hartley,* at 779. The concept of legal causation is difficult to define precisely. Depending on the context of a particular case, "the rationale in many negligence cases combines aspects of causation, intervening events, duty, foreseeability, reliance, remoteness, and privity". *Hartley,* at 780.

In *Hartley,* the State and County were sued for the death of Mrs. Hartley in an automobile accident caused by Johnson, a drunken driver whose license was subject to revocation under the Washington Habitual Traffic Offenders Act, RCW 46.65. The court held:

> Johnson's drunk driving was cause in fact and the legal cause of Mrs. Hartley's tragic death. This is not to say that there cannot be more than one party who is legally liable (*Kaiser v. Suburban Transp. Sys.,* [65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350 (1965)]; *Mason v. Bitton,* 85 Wn.2d 321, 326, 534 P.2d 1360 (1975); *State v. Jacobsen,* 74 Wn.2d 36, 442 P.2d 629 (1968)); but here the failure of the government to revoke Johnson's license is too remote and insubstantial to impose liability for Johnson's drunk driving.

*Hartley,* at 784.

We agree with the trial court that the legal cause of Mr. Baumgart's injuries was Mr. Iverson's drunken or negligent driving, rather than Mr. Iverson's premature release by the County. Applying "[p]olicy considerations and common sense", *Hartley,* at 781, we hold Mr. Baumgart's theory of liability is simply too attenuated to impose responsibility on the County.

Mr. Baumgart argues that the *Hartley* rationale does not apply, because a factor in that decision was the absence of

any "special relationship" between the defendants and either the victim or the third party. *Hartley,* at 784–85 (citing *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983)).

In *Petersen,* the court held that the State had a duty to protect potential victims from the dangerous propensities of a patient at a state mental hospital. The *Petersen* court applied Restatement (Second) of Torts, which reflects the general rule of nonliability and its exceptions:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (1965).

The reference to *Petersen* in *Hartley* applies language[1] similar to Restatement (Second) of Torts § 319 (1965):

> Duty of Those in Charge of Person Having Dangerous Propensities
> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Mr. Baumgart has alleged facts, assumed to be true on review of summary judgment, which he claims demonstrate the existence of a "special relationship" between the County and Mr. Iverson: Mr. Iverson had a history of alcohol–related offenses, including three DWI's, leaving the scene of an accident, and two violations for driving without a license. He had a history of drug and alcohol abuse and a suicide attempt. He was supposed to be on Antabuse. The presentence investigator recommended that Mr. Iverson be

---

[1]"Johnson was not under the control of government agents who should have known of his dangerous proclivities, as was the case in *Petersen v. State, supra.*" *Hartley,* at 785.

ordered to undergo inpatient treatment for drug dependency. While in jail, Mr. Iverson received lithium for a condition he described as manic depression. In a deposition, Mr. Iverson said he was denied Antabuse despite repeated requests before his release.

Because the County had actual control over Mr. Iverson, and because it knew, or should have known of his dangerous proclivities, Mr. Baumgart argues, the County had a "special relationship" with Mr. Iverson in the same way that the state psychiatrist had a "special relationship" with the third party mental patient in *Petersen*. We disagree.

Focusing first on the element of control, we note that in *Petersen* the patient was "in custody" for the purpose of therapeutic treatment, while in this case the custody was simply punitive incarceration. Also, in *Petersen,* the patient was hospitalized for symptoms attributed to drug abuse; at the time of the accident in which Mrs. Hartley was killed, the former patient was under the influence of drugs. *Petersen,* at 423–24. Similarly, in *Hosea v. Seattle,* 64 Wn.2d 678, 393 P.2d 967 (1964), the City was held liable for the drunken driving of a jail trustee, who at the time of the accident was serving a sentence for drunken driving. *Hosea,* at 680. Mr. Baumgart argues that this case is analogous to those in which escaped prison inmates cause injuries to innocent victims, and points to *Cansler v. State,* 234 Kan. 554, 675 P.2d 57 (1984). In *Cansler,* seven inmates, all of whom were serving life terms for murder, escaped from the state penitentiary; the plaintiff later was shot three times with rifles taken by the inmates during the escape. *Cansler,* 675 P.2d at 60–61. The relationship between the reason for their incarceration and the acts that caused the plaintiff's injuries is clear. Here, however, Mr. Iverson was in custody for the crimes of burglary and theft, neither of which is remotely related to the accident which later caused Mr. Baumgart's injuries.

Next, we focus on the "dangerous proclivities" element. In *Petersen,* the patient had exhibited bizarre, violent

behavior before his release. *Petersen,* at 423. The dangerous proclivities of murderers, as in *Cansler,* are obvious. This case, however, is more closely related to *Hartley.* In that case the drunken driver had been arrested many times for driving while intoxicated. *Hartley,* at 770. "Nothing, however, sets Johnson apart from the thousands of other offenders subject to license revocation under the act". *Hartley,* at 784. Here, while Mr. Iverson had a history of alcohol and drug abuse, nothing sets him apart from others with similar problems who were released from jail.

Finally, as the *Hartley* court observed, the *Petersen* decision is different from those in which the defendant's duty was too remote to establish liability. The court observed that the *Petersen* holding is

> distinguishable from our holding of nonliability for a third party's subsequent negligent acts in *Pratt v. Thomas,* 80 Wn.2d 117, 491 P.2d 1285 (1971). A cause in fact connection could be made in *Pratt*; "but for" leaving keys in a car, the car may not have been stolen. It was not reasonable, however, to assign responsibility to the car owner for the subsequent theft, reckless driving, and resultant accident. The car owner's duty/relationship to the person injured in the accident was simply too attenuated.

*Hartley,* at 783–84.

Mr. Baumgart also argues that *Bailey v. Forks,* 108 Wn.2d 262, 737 P.2d 1257 (1987) applies in this case. There, the plaintiff was injured by a drunken driver; shortly before the accident, a police officer, knowing the driver was intoxicated, had ordered the driver to leave and watched him drive away. *Bailey,* at 263–64. The sole issue in *Bailey* was whether the public duty doctrine precluded liability. The court held that it did not, based on the "failure to enforce" exception to the doctrine. Our conclusion that *Hartley* applies in this case makes discussion of the public duty doctrine unnecessary. We note, however, that in *Bailey* the police officer's contact with the drunken driver, shortly before the accident that injured the plaintiff,

provides the link that set that driver apart from other drunken drivers. The plaintiff's theory of liability was clear and direct.

Logic, justice, and common sense persuade us the trial court's order granting summary judgment was correct. We affirm.[2]

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court May 31, 1988.

---

[2]We decline to address Mr. Baumgart's argument that the County should be held liable under the principle of res ipsa loquitur. This issue was not raised before the trial court, and is not properly before this court. RAP 2.5(a); *Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982).