[No. 28640-4-I.    Division One.    November 30, 1992.]

LEANN K. JOHNSON, *as Administratrix, Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*Duncan A. Bonjorni* and *Law Offices of Duncan A. Bonjorni,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John Cobb, Deputy,* for respondents.

BAKER, J. — Leann Johnson sued King County for the wrongful death of her husband Timothy Johnson, alleging the County negligently released from prison the man responsible for her husband's death. She appeals the trial court's order granting King County's motion for summary judgment. Because the County owed no special duty to the decedent, and the accident which resulted in the death of Timothy Johnson was too attenuated to establish legal causation, we affirm.

I

Timothy Johnson was killed when a vehicle driven recklessly by John McMahon struck him. At the time of the accident, McMahon's blood alcohol level was .24 percent. McMahon was convicted of vehicular homicide.

Approximately 1 week before the accident, McMahon had been incarcerated in the King County Jail for violation of the terms of his parole from a prior unrelated conviction. The Indeterminate Sentence Review Board decided to reinstate McMahon's parole on the condition that he undergo treatment for substance abuse. McMahon was to be released to his parole officer and transferred directly to the Washington Drug Rehabilitation Center.

Unaware that McMahon was to be transferred directly to the drug treatment center, King County released him. It mistakenly relied on a teletype received from the Depart-

ment of Corrections which stated that McMahon's parole had been reinstated.

## II

■ Johnson bases her claim against King County on the theory of negligence. "In order to show negligence, there must be evidence of the existence of the duty, breach of that duty, proximate cause between the breach and injury, and resulting damages." *Lettengarver v. Port of Edmonds*, 40 Wn. App. 577, 580, 699 P.2d 793 (1985).

■ Duty. The threshold determination in any negligence action is whether the defendant owed a duty of care to the plaintiff. *Taylor v. Stevens Cy.*, 111 Wn.2d 159, 759 P.2d 447 (1988). Where the liability of a municipality is at issue, "[t]he public duty doctrine precludes liability for a public official's negligent conduct unless it is established that ' "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general . . ." '." *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 529, 799 P.2d 250 (1990) (quoting *Taylor*, 111 Wn.2d at 163). In order to overcome the general rule of nonliability under the public duty doctrine, Johnson must show that the municipality owed a special duty to her husband.

To support her argument that King County owed such a special duty of care, Johnson relies upon *Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983), in which the Supreme Court "recognized an exception to the common law rule that a person has no duty to prevent a third person from causing physical injury to another." *Taggart v. State*, 118 Wn.2d 195, 218, 822 P.2d 243 (1992).[1] In *Petersen*, the plaintiff sued the State of Washington alleging that a state psychiatrist negligently failed to protect her from the foreseeable acts of a

---

[1] This exception to the common law rule is based on § 315 and § 319 of the Restatement (Second) of Torts. Section 315 states:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

patient. The patient, Larry Knox, had been hospitalized following a self-destructive act associated with use of the drug "angel dust". The state hospital released Knox without seeking an extension of his involuntary commitment. At trial, the psychiatrist testified that Knox was potentially dangerous, that his behavior was unpredictable, and that Knox was likely to resume his use of angel dust. *Petersen*, 100 Wn.2d at 428.

The Supreme Court held that the psychiatrist had a "duty to take reasonable precautions to protect anyone who might foreseeably be endangered by Larry Knox's drug-related mental problems." *Petersen*, 100 Wn.2d at 428. The Supreme Court subsequently noted that this duty extends to anyone foreseeably endangered by the patient's condition, and is not limited to specifically identifiable victims. *Taggart*, 118 Wn.2d at 218.

■ Unlike *Petersen*, there is no evidence in this case which supports a determination that a special relationship existed between King County and McMahon. Johnson points to no evidence in the record that the County was aware of McMahon's dangerous propensities. In fact, the affidavit of King County's Intake, Transfer, and Release (ITR) manager states, "[t]here is no indication in the booking documents that John McMahon was an alcohol abuser or had problems with alcohol." The ITR manager further stated, "no problems with alcohol were apparent to either the booking officer or the classification staff when he was booked". In response to the question whether he ever used alcohol or drugs during the King County Jail screening process, McMahon checked the "no" box. King County was not put on notice either by McMahon's conduct or his record that he had the propensity

---

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

Section 319 reads:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

to engage in the type of acts which caused Timothy Johnson's death.

This case is much more similar to *Noonan v. State*, 53 Wn. App. 558, 769 P.2d 313, *review denied*, 112 Wn.2d 1027 (1989), wherein the court considered whether the Spokane Alcohol Rehabilitation Center, Inc. (SPARC) owed a duty of care to the plaintiff, who was raped and kidnapped by one of SPARC's patients. The court distinguished *Petersen* on grounds that no special relationship existed between SPARC and that particular patient. *Noonan*, 53 Wn. App. at 566. The court further held:

> [W]e do not find section 319 of the Restatement applicable since SPARC was not put on notice either by his conduct or his record that Mr. Jones had the propensity to commit the acts he engaged in here. Thus, we conclude as a matter of law SPARC was under no duty to protect the plaintiffs from the unfortunate events which occurred.

*Noonan*, 53 Wn. App. at 566-67.

Moreover, in *Taggart* the Supreme Court stated, "a duty will be imposed under § 315 only upon a showing of a 'definite, established and continuing relationship between the defendant and the third party.' " *Taggart*, 118 Wn.2d at 219. Here, there is no evidence beyond the fact of incarceration which would support an inference that the type of definite and continuing relationship contemplated in *Petersen* existed between King County and McMahon. While Johnson argues the State's knowledge of McMahon's history of drug and alcohol abuse should be imputed to King County "as an agent of the State" in order to establish such a relationship, she cites no authority for this proposition and it is unsupported by the facts.

Accordingly, we hold that Johnson has failed to raise a genuine issue of material fact regarding the existence of a special relationship upon which a duty could be predicated.

■ Proximate Cause. Proximate cause consists of two elements: cause in fact and legal cause. *Taggart*, 118 Wn.2d at 225; *Medrano v. Schwendeman*, 66 Wn. App. 607, 611, 836 P.2d 833 (1992).

Cause in fact concerns the "but for" consequences of an act: those events the act produced in a direct, unbroken sequence, and which would not have resulted had the act not occurred. Legal causation rests on considerations of policy and common sense as to how far the defendant's responsibility for the consequences of its actions should extend. The question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter.

(Citations omitted.) *Taggart*, 118 Wn.2d at 225-26.

In *Baumgart v. Grant Cy.*, 50 Wn. App. 671, 750 P.2d 271, *review denied*, 110 Wn.2d 1033 (1988), the plaintiff sued Grant County, alleging that the County negligently released one of its prisoners and that the premature release proximately caused his injuries. Viewing the evidence in the light most favorable to the nonmoving party, the trial and appellate courts assumed that Grant County released the prisoner prematurely. The Court of Appeals also assumed that the premature release of the prisoner was the cause in fact of the plaintiff's injuries.

The court went on, however, to consider whether the negligent release of the prisoner was the legal cause of Baumgart's injuries. The court held that

the legal cause of Mr. Baumgart's injuries was Mr. Iverson's drunken or negligent driving, rather than Mr. Iverson's premature release by the County. Applying "[p]olicy considerations and common sense", *Hartley [v. State]*, [103 Wn.2d 768, 698 P.2d 77 (1985)] at 781, we hold Mr. Baumgart's theory of liability is simply too attenuated to impose responsibility on the County.

*Baumgart*, 50 Wn. App. at 674.

In *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985) the plaintiffs sued the State for negligent failure to revoke the driver's license of a habitual traffic offender, Eugene Johnson. *Hartley*, 103 Wn.2d at 769. Johnson was intoxicated at the time of an automobile accident which resulted in Janet Hartley's death. Johnson subsequently pleaded guilty to negligent homicide.

At the time of the accident, Johnson was subject to a revocation of his driver's license under the Washington Habitual Traffic Offenders Act, RCW 46.65. *Hartley*, 103 Wn.2d at 770.

In considering whether the State should be held liable for failure to revoke Johnson's driver's license, the court concluded

> neither the State nor County falls within these boundaries of legal causation, even assuming the validity of plaintiffs' factual allegations. Johnson's drunk driving was cause in fact and the legal cause of Mrs. Hartley's tragic death. This is not to say that there cannot be more than one party who is legally liable; but here the failure of the government to revoke Johnson's license is too remote and insubstantial to impose liability for Johnson's drunk driving.

(Citations omitted.) *Hartley*, 103 Wn.2d at 784.

■ Under *Hartley* and *Baumgart*, King County's premature release of McMahon is too attenuated to establish legal causation. The existence of proximate cause is normally a factual question for the jury. However, when the facts are undisputed and "the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, it is a question of law for the court." *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773, 779, 632 P.2d 504 (1981). We hold that Johnson has failed to raise a genuine issue of material fact regarding the element of proximate cause.[2]

Affirmed.

PEKELIS and KENNEDY, JJ., concur.

Review denied at 121 Wn.2d 1018 (1993).

---

[2] Johnson argues that the public duty doctrine should be abolished. While this argument is supported by commentary and some case law from other jurisdictions, our Supreme Court recently reaffirmed the public policy rationale underlying the public duty doctrine in *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990).