[No. 37291-2-I. Division One. September 22, 1997.]
JOHN HERTOG, *as Guardian, Petitioner*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

---

*Michelle Gonzales* and *Janet L. Rice* of *Schroeter, Goldmark & Bender, P.S.*, for petitioner.

*Mark H. Sidran, City Attorney*, and *Thomas S. Sheehan* and *Marcia M. Nelson, Assistants*, for respondent City of Seattle.

*Norm Maleng, Prosecuting Attorney*, and *C. Craig Parker, Deputy*, for respondent King County.

Cox, J. — At issue in this case is the propriety of a discovery order that denies access to treatment records and prohibits deposition testimony of treatment providers for Barry Krantz, a convicted sex offender. In the interest of judicial economy, we also address the propriety of the denial of summary judgment to the two municipalities

that simultaneously exercised supervision over Krantz at the time he raped a six-year-old girl.[1]

Barry Krantz raped six-year-old S.H. Krantz was on probation with the City of Seattle following convictions for lewd offenses when he committed the rape. Sid Hoover was Krantz' probation officer. Krantz was also being supervised by King County Court Services while awaiting trial in King County Superior Court on a burglary charge with a sexual motivation allegation. Tyrone Lake was his pretrial counselor. Following Krantz' conviction for raping S.H., her guardian brought this action against the City of Seattle and King County for negligent supervision of Krantz. The City and County both moved for summary judgment. In response, S.H.'s guardian ad litem, John Hertog, sought a continuance of the hearing of the motion, discovery of treatment records for Krantz, and the deposition testimony of two of his treatment providers.[2] The judge before whom the summary judgment motion was pending granted the request for continuance of the hearing. Another judge denied the requested discovery. The trial court ultimately denied both motions for summary judgment. A commissioner of this court granted discretionary review of the discovery order as well as the denial of the summary judgment motions by the City and County. We affirm in part and reverse in part.

# I

## Privilege

Hertog sought discovery of the records and testimony of Dr. Von Cleve, a psychologist with Correctional Specialties, and Megan C. Kelley of Professional Alcohol & Drug Services. Dr. Von Cleve was treating Krantz for sexual deviancy. Kelley evaluated Krantz with respect to his

---

[1]*See Waller v. State*, 64 Wn. App. 318, 338, 824 P.2d 1225, *review denied*, 119 Wn.2d 1014 (1992).

[2]In July 1995, John Hertog was appointed as guardian ad litem.

alcohol and drug abuse. It is not clear from the record whether Kelley provided treatment to Krantz. For purposes of our analysis, we assume she was providing treatment.

Hertog first argues that Krantz had no reasonable expectation that either the records or the communications would be kept confidential. He next argues that Krantz waived the privilege by signing a release allowing Dr. Von Cleve to disclose information to Sid Hoover of Seattle Municipal Probation. Finally, he argues that Krantz did not assert his privilege and the City does not have standing to assert Krantz' privilege.

The City opposed discovery on the basis of its assertion that the records and communications are privileged because they were made for the purpose of Krantz' *treatment*, not for the purpose of making recommendations to the court. It next argues that the release Krantz signed was limited in scope and does not establish that Krantz intentionally and voluntarily relinquished his privilege.

We hold that Krantz had no reasonable expectation that his communications with either Dr. Von Cleve or Megan Kelley would remain confidential. Thus, there was no privilege, and discovery of the records and deposition testimony is not barred.

■ We review an order denying a motion to compel discovery for abuse of discretion.[3] Abuse is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[4]

■ ■ The scope of discovery is broad and is subject to narrow exceptions, one of which is privileged material.[5] The psychologist-patient privilege is defined by statute:

Confidential communications between a client and a

---

[3]*See Barfield v. City of Seattle*, 100 Wn.2d 878, 886-87, 676 P.2d 438 (1984).

[4]*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

[5]CR 26(b)(1) provides in pertinent part as follows:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"

psychologist shall be privileged against compulsory disclosure to the same extent and subject to the same conditions as confidential communications between attorney and client . . . .[6]

This privilege does not apply where the person with the privilege has no reasonable expectation that the communications would be confidential.[7] A person may not claim a privilege "as to communications that do not originate in the confidence that they will not be disclosed."[8] We must therefore determine the nature of Krantz' reasonable expectations in light of the circumstances surrounding his communications with Dr. Von Cleve.[9]

■ Where communications are made for the purpose of reporting to an agency or court, they are not privileged.[10] In *J.N. v. Bellingham School District*, the court held that an assessment by a school psychologist made for the purpose of determining a student's need for special education services was not privileged.[11] Likewise, in *Post*, the court held that the defendant's interview with a psychologist was not privileged where the purpose of the interview was to make a recommendation to Department of Corrections personnel.[12]

The courts have also held that where a patient is warned that the communications would not be confidential, the privilege does not apply.[13] In *King*, this court held that where substantial evidence supported the trial court's

---

[6]RCW 18.83.110.

[7]*State v. Post*, 118 Wn.2d 596, 613, 826 P.2d 172 (1992); *In re Welfare of Henderson*, 29 Wn. App. 748, 752, 630 P.2d 944 (1981).

[8]*State v. King*, 130 Wn.2d 517, 532, 925 P.2d 606 (1996).

[9]*Post*, 118 Wn.2d at 612.

[10]*State v. Warner*, 125 Wn.2d 876, 892-93 n.8, 889 P.2d 479 (1995).

[11]74 Wn. App. 49, 64-65, 871 P.2d 1106 (1994).

[12]118 Wn.2d at 612-613.

[13]*Post*, 118 Wn.2d at 612-13; *State v. King*, 78 Wn. App. 391, 404, 897 P.2d 380 (1995), *aff'd*, 130 Wn.2d 517, 925 P.2d 606 (1996); *Warner*, 125 Wn.2d at 892.

finding that King was warned that his disclosures in therapy might be released to the court, there was no privilege.[14] Similarly, in *Post*, the psychologist informed the defendant that his communications were not confidential.[15]

■ Here, the municipal court ordered Krantz to participate in treatment as a condition of his continued probation. He signed a consent form for the release of information by Dr. Von Cleve to Sid Hoover, the probation officer. The form stated, in relevant part, that:

> I hereby consent to a mutual exchange of information between Kenneth Von Cleve and Sid Hoover, Seattle Municipal Probation. The purposes of the disclosures are to provide referral information and to inform Seattle Municipal Probation of diagnosis, attendance and non-attendance, *treatment issues*, progress, prognosis and completion.[16]

Given the scope of the information, including treatment issues, that Krantz authorized to be disclosed to the probation officer, Krantz could not have reasonably expected that his communications with Dr. Von Cleve would be privileged. Krantz knew or reasonably should have known that his communications with Dr. Von Cleve and the records maintained by the psychologist would be used to monitor performance for probation purposes.

The City argues that *State v. Sullivan*[17] controls this case. It contends that under *Sullivan*, communications made during treatment, as opposed to forensic examinations, are privileged. But as to the psychologist-patient privilege, our Supreme Court recently stated that even where communications take place for the purpose of treat-

---

[14]*King*, 78 Wn. App. at 404.

[15]118 Wn.2d at 612-13.

[16](Emphasis added.)

[17]60 Wn.2d 214, 373 P.2d 474 (1962).

50

ment, a patient who has been informed that there is no confidentiality cannot assert the privilege.[18]

The trial court abused its discretion by denying the motion to compel discovery of Dr. Cleve's information regarding Krantz. Accordingly, we reverse that portion of the trial court's discovery order.

Because there was no privilege as to Dr. Von Cleve or his records in this case, we need not address the other arguments that Hertog makes to obtain discovery.

Hertog also argues that Megan Kelley's records of Krantz' drug and alcohol treatment are subject to discovery because he signed the release in favor of Sid Hoover and Seattle Municipal Probation. We agree that such records are subject to discovery, but on a different ground than that argued by Hertog.

The City relies primarily on the psychologist-patient privilege for its argument regarding Kelley. But the record before us fails to show that Kelley is a psychologist or other person to which this statutory privilege applies. Rather, Kelley's records and testimony fall within the privilege set forth in RCW 70.96A.150(1). That statute, in relevant part, provides that

> [t]he registration and other records of treatment programs *shall remain confidential.* Records may be disclosed (a) in accordance with the prior written consent of the patient with respect to whom such record is maintained, (b) *if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause . . . .*[19]

The purpose of Kelley's work with Krantz was to provide information to assist in monitoring Krantz. Given this circumstance, Krantz had no more reasonable expectation of confidentiality of his communications with Kelley than he did with Dr. Von Cleve. Thus, he cannot rely on the protection of the above statute to deny discovery to Hertog.

---

[18]*Warner,* 125 Wn.2d at 892-93 n.8.

[19](Emphasis added.)

■ There is an additional basis for our conclusion that Kelley's testimony and records are discoverable. Subsection (b) of RCW 70.96A.150(1) clearly contemplates release of such records by a court order after a showing of "good cause." Good cause does not have a precise definition. BLACK'S LAW DICTIONARY includes several definitions, the following being the one most applicable here:

> "Good cause" for discovery is present if information sought is material to moving party's trial preparation. Such requirement for discovery and production of documents is ordinarily satisfied by a factual allegation showing that requested documents are necessary to establishment of the movant's claim or that denial of production would cause moving party hardship or injustice.[20]

Here, the records sought are relevant to the subject matter of this litigation and reasonably calculated to lead to the discovery of admissible evidence.[21] Thus, there was good cause for the court to have issued an order permitting discovery.[22]

The court abused its discretion by denying the motion to compel discovery of Megan Kelley's records and deposition testimony regarding Krantz. Accordingly, we reverse that portion of the court's discovery order.

## II

### Liability of City

The City contends that Hertog has not established the existence of any genuine issues of material fact with respect to the alleged negligence of Hoover and the City. We disagree.

When we review a summary judgment order, we under-

---

[20]BLACK'S LAW DICTIONARY 692 (6th ed. 1990) (citations omitted).

[21]See CR 26(b)(1).

[22]See also In re D.D.S., 869 P.2d 160 (Alaska 1994).

take the same inquiry as the trial court.[23] We determine whether any genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law.[24] We consider all facts and reasonable inferences from facts in the light most favorable to the nonmoving party.[25] We review questions of law de novo.[26]

The elements of negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; and (3) an injury proximately caused by the breach.[27] The existence of a duty is a question of law.[28] Once a duty is established, issues of fact regarding breach of the duty and whether the breach was a proximate cause of the plaintiff's injuries are usually left for the finder of fact.[29] Only when reasonable minds could reach but one conclusion are such factual issues determined as a matter of law.[30]

The City first argues that it had no duty to S.H. The City contends that the declaration of William Stough, a former state probation officer who testified that Hoover's actions were not reasonable, does not create a genuine issue of material fact. Citing *Ruff v. County of King*, the City argues that Stough's declaration fails to identify any local or national standard governing Hoover's conduct as a probation officer and that absent such a standard Hertog can show no duty.

In *Ruff*, the plaintiff was injured in an auto accident.

---

[23]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[24]CR 56(c).

[25]*Tydings*, 125 Wn.2d at 341.

[26]*Tydings*, 125 Wn.2d at 341.

[27]*Ruff v. County of King*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995).

[28]*Zenkina v. Sisters of Providence in Wash., Inc.*, 83 Wn. App. 556, 560, 922 P.2d 171 (1996), *review denied*, 131 Wn.2d 1003 (1997).

[29]*Johnson v. State*, 77 Wn. App. 934, 937, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995).

[30]*Ruff*, 125 Wn.2d at 704.

He argued that the County had a duty to place guardrails along a road because the American Association of State Highway and Transportation Officials (AASHTO) standards required them. The Court noted that the County had not adopted AASHTO standards. Therefore, the plaintiff could not establish a duty by citing to them. But the Court went on to state that the question of whether the County was negligent depended on whether the roadway was inherently dangerous or deceptive to a prudent driver. As such, the question there was whether the County's acts were reasonable.[31]

██ ██ Nothwithstanding *Ruff*, because this case involves the actions of a probation officer, it is controlled by *Taggart v. State*.[32] There, our Supreme Court stated the test for when a person has a duty to control the conduct of a third person to prevent harm to others. The court relied on the RESTATEMENT (SECOND) OF TORTS test:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.[33]

RESTATEMENT (SECOND) OF TORTS § 319 describes one instance in which the requisite level of control exists:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to

---

[31]*Ruff*, 125 Wn.2d at 706.

[32]*Taggart v. State*, 118 Wn.2d 195, 218, 822 P.2d 243 (1992).

[33]*Taggart*, 118 Wn.2d at 218 (citing RESTATEMENT (SECOND) OF TORTS, § 315 (1965)).

control the third person to prevent him from doing such harm.[34]

In *Taggart*, the Supreme Court concluded that state parole officers "take charge" of parolees under RCW 72.04A.080. Factors that the court cited as evidence of taking charge included:

> The State can regulate a parolee's movements within the state, require the parolee to report to a parole officer, impose special conditions such as refraining from using alcohol or undergoing drug rehabilitation or psychiatric treatment, and order the parolee not to possess firearms. The parole officer is the person through whom the State ensures that the parolee obeys the terms of his or her parole. Additionally, parole officers are, or should be, aware of their parolees' criminal histories, and monitor, or should monitor, their parolees' progress during parole. Because of these factors, we hold that parole officers have "taken charge" of the parolees they supervise for purposes of § 319. When a parolee's criminal history and progress during parole show that the parolee is likely to cause bodily harm to others if not controlled, the parole officer is under a duty to exercise reasonable care to control the parolee and to prevent him or her from doing such harm.[35]

The *Taggart* court explicitly stated that a custodial or continuous relationship is *not* required for a duty to exist.[36] In addition, it is not necessary that the person controlling the third party be able to take direct enforcement measures. For example, the court had already held in *Petersen v. State*[37] that the psychiatrist treating a state hospital patient had a duty to take reasonable precautions to protect those who were foreseeably endangered by the patient. This was so, notwithstanding the fact that the

[34]RESTATEMENT (SECOND) OF TORTS § 319 (1965).

[35]*Taggart*, 118 Wn.2d at 220.

[36]*Taggart*, 118 Wn.2d at 223.

[37]100 Wn.2d 421, 671 P.2d 230 (1983).

psychiatrist had to petition the court for commitment and failed to do so.[38]

Here, it is undisputed that Sid Hoover took charge of Krantz in the sense that he was the probation officer assigned to monitor the parole conditions that the court imposed to Krantz' release. It is not relevant that Hoover had to seek the court's intervention to revoke probation.[39]

It is equally clear that Hoover knew that Krantz was a person likely to cause bodily harm to others within the meaning of § 319. Tim Smith, Krantz' former therapist, stated that he believed Krantz was dangerous. Krantz repeatedly offended despite treatment opportunities. Krantz' behavior escalated from exposure to a sexually motivated burglary, a matter for which Hoover knew Krantz had been charged prior to the rape of S.H. The record shows that Hoover knew or should have known of these propensities and therefore had a duty to take reasonable steps to control Krantz. There is no question that as a matter of law, Hoover, as a probation officer for Krantz, had a duty to control him so as to prevent Krantz from harming others in any reasonably foreseeable manner.[40]

We must next consider whether genuine issues of material fact exist with respect to Hoover's breach of duty. The City strenuously argues that Hoover did everything he could have done to ensure that Krantz complied with the terms of his probation.

Hertog claims that Hoover failed to monitor Krantz' compliance with the terms of probation *after* the municipal court's July 30, 1990 denial of Hoover's request to revoke Krantz' probation. We conclude that reasonable minds could differ on this question, and thus a genuine issue of material fact exists.

Hertog offers as evidence the declaration of William

---

[38]*Petersen*, 100 Wn.2d at 428-29.

[39]*See Petersen*, 100 Wn.2d at 428-29.

[40]*See Taggart*, 118 Wn.2d at 224-25.

Stough, an experienced state probation officer. Stough indicates his opinion that Hoover should have scheduled more face-to-face meetings with Krantz following the court's denial of the request for revocation and should have made a greater effort to verify Krantz' participation in treatment and abstinence from drugs and alcohol.

The record shows that Krantz' prior offenses were linked to his abuse of alcohol and other drugs. The record also shows that Dr. Von Cleve was very concerned about the lack of monitoring of Krantz by treatment professionals. Yet the record also shows that Hoover did not verify on a timely basis that Krantz was being monitoring by way of random urinalysis or other methods. We believe that a jury could find that had Hoover checked earlier to verify whether Krantz was being monitored, he could have earlier requested another revocation hearing. The fact that he had recently requested such a hearing and that the July 30, 1990 hearing did not result in incarceration does not necessarily relieve him of the duty to continue to monitor Krantz closely.

The City claims Stough's declaration is irrelevant because Stough does not have experience with the municipal probation system. The record before us does not show whether the City sought below to have the affidavit stricken on this or any other basis. We assume the court considered it. In any event, the City has failed to produce any evidence regarding the differences, if any, between the state and municipal systems, except that municipal probation officers may enforce the terms of probation only through the court. As we have already noted, that distinction is irrelevant under *Petersen*. There is a genuine issue of fact respecting the breach of a duty by Hoover and the City.

The final prong of the negligence analysis requires us to determine whether a genuine issue of material fact exists with respect to whether Hoover's actions were a proximate cause of the rape. We hold such an issue does exist.

Proximate cause consists of two elements: cause

in fact and legal cause.[41] The cause in fact determination is appropriately resolved on summary judgment only where the finder of fact can reach but one reasonable conclusion.[42]

The City argues that based on the knowledge he had, Hoover could not have done anything to prevent Krantz from committing the rape. We disagree.

If Hoover had earlier attempted to determine whether monitoring by random urinalysis was being done and learned that it was not, he could have again sought revocation of probation. Examination of the records of Dr. Von Cleve and Kelley, as well as their deposition testimony, will clarify whether earlier violations occurred. We cannot say that there is no cause in fact.

■ ■ "Legal causation rests on considerations of policy and common sense as to how far the defendant's responsibility for the consequences of its actions should extend."[43] The question of legal causation "is so intertwined with the question of duty that the former can be answered by addressing the latter."[44] As we have concluded that Hoover had a duty to take reasonable steps to prevent Krantz from committing reasonably foreseeable injurious acts, we conclude that legal cause existed. Summary judgment on the issue of proximate cause would thus have been improper.

The City cites several cases to support its claim that there is no proximate cause. These cases are distinguishable. In *Hartley v. State*,[45] the Supreme Court stated that in earlier cases it has "attributed legal causation on the basis of the relationship between the defendant and the

---

[41]*Johnson v. State*, 68 Wn. App. 294, 298, 841 P.2d 1254 (1992), *review denied*, 121 Wn.2d 1018 (1993).

[42]*Baumgart v. Grant County*, 50 Wn. App. 671, 673, 750 P.2d 271, *review denied*, 110 Wn.2d 1033 (1988).

[43]*Taggart*, 118 Wn.2d at 226.

[44]*Taggart*, 118 Wn.2d at 226.

[45]103 Wn.2d 768, 784, 698 P.2d 77 (1985).

third party." In the cases the City cites, the courts found no special relationship between the defendant and the perpetrator of the plaintiffs' injuries. Here, there is a special relationship.

In *Johnson v. State*,[46] the wife of a victim of a vehicular homicide sued King County for negligently releasing from prison John McMahon, the man who killed her husband. The court held that the County had no duty to the plaintiff. McMahon, whose blood alcohol level was .24 percent at the time of the accident, had been imprisoned for violation of parole from a charge unrelated to substance abuse. Because there was no evidence that King County was aware of McMahon's substance abuse problems, the court concluded that the County had no duty to protect against McMahon's actions resulting from those problems.

In *Baumgart*,[47] Grant County released Kenneth Iverson from custody after he was charged with burglary and theft. Iverson subsequently injured Baumgart in an auto accident while under the influence of drugs and alcohol. The court held that the County had no special relationship to Iverson. While it noted that Iverson had a history of alcohol-related offenses, it relied on the fact that Iverson was not in custody for treatment, but as punishment.[48] It distinguished *Hosea v. City of Seattle*[49] because in that case the court stated it could not as a matter of law conclude that the City was not liable for the drunken driving of a jail trustee serving a sentence for drunken driving.

Finally, in *Hartley*,[50] the plaintiff claimed that the State negligently failed to initiate proceedings to revoke a driver's license under the Washington Habitual Traffic Of-

[46] 68 Wn. App. 294.

[47] 50 Wn. App. 671.

[48] 50 Wn. App. at 676.

[49] 64 Wn.2d 678, 393 P.2d 967 (1964).

[50] 103 Wn.2d 768.

fenders Act (HTOA)[51] against a person who had been arrested numerous times for drunk driving. The Supreme Court held that there was no special relationship between the drunk driver and the State because nothing set him apart from other traffic offenders subject to the HTOA.

In contrast, the record before us, interpreted in the light most favorable to Hertog, shows the existence of a special relationship between the City and Krantz. Krantz was under the supervision of a City probation officer after being convicted of a number of lewd offenses. Hoover was aware of Krantz' substance abuse problems and his record of sex-related crimes. Therefore, Hoover and the City had a special relationship to Krantz for the purpose of preventing him from committing reasonably foreseeable sex-related crimes. We cannot conclude as a matter of law on this record that there was no proximate cause.

The trial court properly denied the City's motion for summary judgment.

Because we hold upon our de novo review that denial of summary judgment was proper, we need not address the City's argument on appeal that the trial court denied summary judgment on an erroneous basis. For the same reason, we need not address the City's argument regarding discretionary immunity. Finally, we need not address Hertog's argument that the City waived this defense below.

The City observes that Hertog admitted below that there is no evidence that the City negligently hired Hoover. Hertog does not state otherwise on appeal. Accordingly, we affirm that portion of the trial court's summary judgment order that dismisses Hertog's negligent hiring claim.

## III

### Liability of County

King County argues that Tyrone Lake, Krantz' pretrial counselor, and the County have judicial immunity from

---

[51]RCW 46.65.

Hertog's claim under *McKenna v. Edwards*.[52] In *McKenna*, a Division III case, the court concluded that a Spokane County corrections officer was acting as "an arm of the court" and performing functions traditionally performed by the court when investigating the conduct of a defendant in pretrial release.[53] *McKenna* does not control the result in this case, where Lake's *supervision* of Krantz is at issue.

The purpose of judicial immunity is to "ensure that judges can administer justice without fear of personal consequences."[54] It extends to court personnel acting as arms of the court.[55] It has been applied to those making recommendations to the court where the court retains final decision-making power[56] and to witnesses and other participants in judicial proceedings.[57]

In *Taggart*, the court distinguished between instances in which parole officers have quasi-judicial rather than qualified immunity. It stated that when acting outside any judicial or quasi-judicial process, parole officers have only qualified immunity:

> We hold that parole officers are entitled to quasi-judicial immunity only for those functions they perform that are an integral part of a judicial or quasi-judicial proceeding. . . .

---

[52]65 Wn. App. 905, 830 P.2d 385, *review denied*, 120 Wn.2d 1003 (1992).

[53]65 Wn. App. at 912.

[54]*Taggart*, 118 Wn.2d at 203.

[55]*Barr v. Day*, 124 Wn.2d 318, 332, 879 P.2d 912 (1994) (holding that guardians ad litem act as surrogates of the court in settlement hearings and thus have judicial immunity); *Adkins v. Clark County*, 105 Wn.2d 675, 717 P.2d 275 (1986) (bailiff acting as an arm of the court during trial and therefore is protected by judicial immunity).

[56]*Walker v. State*, 60 Wn. App. 624, 628, 806 P.2d 249, *review granted*, 117 Wn.2d 1001 (1991), *petition dismissed*, 118 Wn.2d 1014 (1992).

[57]*Bruce v. Byrne-Stevens & Assocs. Eng'rs*, 113 Wn.2d 123, 129, 776 P.2d 666 (1989).

But when the officer takes purely supervisory or administrative actions, no such protection arises.[58]

Here, the issue is whether Lake was negligent in *supervising* Krantz during his pretrial release. Thus, Lake is protected only by qualified immunity. Lake's protection does not extend to the County.[59]

The County relies almost exclusively on *McKenna* to establish that Lake owed no duty to S.H. The County is incorrect.

First, the court noted in *McKenna* that the court's pretrial release order did not require supervision by an officer of the court.[60] Here, Lake testified in his deposition that pretrial supervisors "provide supervision pending trial or pending felony disposition to ensure that [defendants] appear for future court appearances." Lake signed the conditions of supervised release on a line marked "Accepted for Supervision" and signed a supervised release contract.

Further, in *McKenna* the court stated that neither the Department of Corrections nor the drug monitoring program to which Edwards was to report had any knowledge "which would warrant imposition of a duty to control the conduct of Edwards."[61] The evidence showed that Edwards was a drug and alcohol abuser. Nothing in the record indicated that Edwards was likely to commit murder and rape.[62]

In contrast, Lake was aware that Krantz had a history of both drug and alcohol abuse and sexual deviancy. Lake was aware that Krantz was on probation in both Seattle and Bellevue for incidences of lewd conduct. He was also aware of the sexual motivation allegation associated with the charge for which Krantz was to be tried in superior

---

[58]*Taggart*, 118 Wn.2d at 213.

[59]*Savage v. State*, 127 Wn.2d 434, 447, 899 P.2d 1270 (1995).

[60]65 Wn. App. at 917.

[61]65 Wn. App. at 917.

[62]65 Wn. App. at 917.

court. Lake received from Krantz' attorney letters from Megan Kelley and Dr. Von Cleve describing Krantz' substance abuse problems and history of sexual deviancy. In particular, Dr. Von Cleve's letter expresses his concern about the lack of monitoring of Krantz to date and the need for close monitoring to increase the likelihood of a favorable prognosis. For these reasons, *McKenna* does not control here.

In its reply brief, the County cites *Metlow v. Spokane Alcoholic Rehabilitation Ctr.*[63] In that case, the court held that an alcohol treatment program and its employee did not have a duty to protect potential victims of a patient required to attend the program under a deferred prosecution. The County argues that *Metlow* is similar to this case because the defendant merely supervised the patient and did not have custodial control over him. We disagree.

First, we note that our Supreme Court in *Taggart* held that full custodial control is not required to establish the existence of a parole officer's duty to control a parolee.[64] In addition, the record in the case before us indicates that Lake signed a document accepting supervision of Krantz. This document also states that Krantz was released "[t]o the custody of the King County Services Section." In contrast, in *Metlow* the treatment program was required to report failures to comply with the terms of the deferred prosecution, but there is no indication that its employees had the same level of responsibility that Lake assumed with respect to Krantz. *Metlow* therefore does not control this case.

We reverse the trial court's discovery order, provided that we affirm the portion of the order that dismisses Hertog's negligent hiring claim. We affirm the denial of the City and County's motions for summary judgment. We remand for further proceedings consistent with this opinion.

[63] 55 Wn. App. 845, 781 P.2d 498 (1989), *review denied*, 114 Wn.2d 1007 (1990).

[64] 118 Wn.2d at 223-24.

WEBSTER, J., concurs.

AGID, J. (concurring) — I fully agree with the majority's disposition of the discovery issue. I concur in the result on the negligence issue only because it is compelled by the Supreme Court's decisions in *Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983), and *Taggart v. State*, 118 Wn.2d 195, 822 P.2d 243 (1992). I continue to believe those decisions ignore the reality of what officials exercising the cursory supervision permitted by state and local law can do to "control" the behavior of dangerous or, as here, potentially dangerous criminals. The huge caseloads and limited resources available to supervising city, county and state officials simply do not permit them to keep track of, much less control, every potentially dangerous defendant. In my view, the ability to control that the Court has imputed under the RESTATEMENT (SECOND) OF TORTS § 315 (1965) is particularly illusory where, again as here, only the court can terminate probation. But, as the majority says, *Petersen* holds this is irrelevant. Majority at 56. Finally, I note that, while Krantz had been *charged* with a sexually-motivated crime in King County, he had not been convicted. Are parole and probation officers to ignore the basic tenet of our criminal justice system that a defendant is presumed innocent? But until the Supreme Court looks again at the unworkable, impractical assumptions about our criminal supervision system that underlie *Petersen* and *Taggart*, I agree that this case must go to trial.

Review granted at 134 Wn.2d 1024 (1998).